THE UNITED STATES DISTRICT COUT
THE SOUTHERN DISTRICT OF NEW YOK
----------------------------------------------------------------X

**OLGA KUNINA**

                             Plaintiff,                    **COMPLAINT FOR DAMAGES**

                -against-                       Index No.:

                                            **JURY TRIAL REQUESTED**

**7 WEST 82 LLC, MICHEL KADOE, and
ELI KADOCH**

                            Defendants.
----------------------------------------------------------------X

## COMPLAINT AND JURY DEMAND

      Now comes the Plaintiff, Olga Kunina, by her undersigned counsel, the law firm of

Joseph Mure Jr., & Associates, for her causes of action, and upon information and belief, alleges

as follows:

## NATURE OF THE ACTION

      1.     This is an action for monetary damages to redress Defendants' unlawful

employment practices, including unlawfully sexually harassing the Plaintiff in violation New

York State Executive Law, Article 15 Human Rights Law and the New York Labor Law §296.

      2.     Over the course of Plaintiff's employment for 7 West 82 LLC ("7 West"),

Defendants went too great lengths to sexual harass Ms. Olga Kunina ("Ms. Kunina" and/or

"Plaintiff"). Defendants orchestrated a plan to place and conceal high-powered video cameras in

unsuspecting devices located in the interior of the bathroom and the bedroom of the apartment,

owned and operated by 7 West, as an employee apartment, that the Plaintiff occupied.

3.      Defendants used these spy cameras to transmit live feeds of both visual images and videos of the Plaintiff, in her underwear, naked, showering, using the commode, and engaging in sexual acts, which were wirelessly to separate devices.

4.      Defendants installed these spy cameras in a place where Ms. Kunina had a right to be left alone and free from unwarranted intrusions.

5.      Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress.

6.      Ms. Kunina was a female employee of 7 West.

7.      Defendant 7 West arranged and paid Ms. Kunina's expenses to travel to this country from Germany to serve as their family au pair, for its managing member Michel Kadoe ("Kadoe), and maid services.

8.      Following Ms. Kunina's tenure as the Kadoes' au pair, 7 West reassigned Ms. Kunina to perform cleaning apartments located at 7 West 82nd Street, New York, New York 10024 (the "Building").

9.      The Building is owned and operated by Defendant 7 West.

10.      Both Kadoe, and Kadoe's brother, Eli Kadoch ("Kadoch"), are employees of 7 West.

11.      Kadoe alleges to be the sole managing member of 7 West.

12.      Kadoe and his brother Kadoch supervised, trained and directed Ms. Kunina's role, duties, hours of employment, location and terms of employment, while providing all the supplies and materials, and operations on behalf of Defendant 7 West.

13.     In connection with the terms Ms. Kunina's employment, as both an au pair, and cleaning services, 7 West provided housing in the Building and access to a restroom for use while Kunina was both on and off duty.

## JURISDICTION

14.     This Court has jurisdiction of this action pursuant to 28 U.S.C §1332(a)(2), because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interests and cost.

## VENUE

15.     Pursuant to 28 U.S.C § 1391(b)(2), venue is proper in the Southern District of New York, the judicial district in which a substantial part of the event or omissions giving rise to the claim occurred.

## THE PARTIES

16.     Ms. Kunina currently resides in, and is a citizen of Germany.  During all times material to this complaint, Ms. Kunina resided in either the ground floor apartment, or apartment 3A, which is owned, operated, and controlled by 7 West, Kadoe, and/or Kadoch (collectively the "Defendants").

17.     Defendant 7 West is a New York Limited Liability Company doing business within the County of New York, and whose principal place of business is located at 7 West 82nd Street, New York, NY 10024. 7 West owns and manages a residential apartment building located at 7 West 82nd Street, New York, NY 10024 and at all times relevant met the definition of "employer" under all applicable statues.

18.     At all times relevant, 7 West operates the apartments in the Building as short-term rentals, akin to a hotel.

19.     Defendant Kadoch, is a male employee and supervisor of 7 West, and upon information and belief, resides in the State of New York, New York County. Upon information and belief, Kadoe is responsible for installing the spy cameras in the interior of the bathroom and bedroom, and wirelessly transmitted videos and images to a laptop, without Ms. Kunina's consent.

20.     Defendant Kadoch resides in 7 West 82nd Street, apartment 1B, in the State of New York, New York County.  At all times material to this complaint, 7 West employed Kadoch to hire, supervise and pay 7 West employees on behalf of 7 West.

21.     Defendant Kadoe, is a male employee and supervisor of 7 West, and upon information and belief, resides in the State of New York, New York County. Upon information and belief, Kadoe is responsible for installing the spy cameras in the interior of the bathroom and bedroom, and wirelessly transmitted videos and images to a laptop, without Ms. Kunina's consent.

22.     Defendant Kadoe is the sole managing member of 7 West 82 LLC. Kadoe resides at 7 West 82nd Street, GF apartment, in the State of New York, New York County. As the managing member of 7 West, Kadoe is responsible for hiring, supervising, training, entrusting, and paying himself, and 7 West employees.

23.     Furthermore, Kadoe know or should have known that Kadoch installed spy cameras in the interior of the bathroom and bedroom, and wirelessly transmitted videos and images to a laptop, without Plaintiff's consent.

## FACTS COMMON TO ALL COUNTS

### *7 West operates a residential apartment building as a quasi-hotel*

24.     7 West is the owner of a nine-unit multi-family residential brownstone building located at 7 West 82nd Street, New York, New York.

25.     7 West's managing member, Kadoe, resides in a two-bedroom apartment located in the Building.

26.     Upon information and belief, Kadoch is a direct supervisor for 7 West.

27.     Both Kadoe and Kadoch are supervisors for 7 West's cleaning staff.

28.     Kadoch, along with Kadoe, are responsible for hiring and firing 7 West employees, issuing pay checks to 7 West employees, and instructs 7 West employees what apartments to clean, when the apartments need to be cleaned, and how the apartment should be cleaned.

29.     In addition to supervising 7 West employees, Kadoch, along with Kadoe, assists customers (short-term renters) who rent apartments locating the in the Building during short-term stays.

30.     According to a former guest and renter from 7 West, Kadoch served as the guests "point man," during his family's weeklong stay in the Building.

31.     Ms. Kunina's was unaware Defendants were recording her in these various acts, where Ms. Kunina took measures to secure her privacy by performing these acts behind closed and locked doors.

32.     Ms. Kunina remained in the employee apartment in the Building, until the end of her employment for 7 West.

33.     Defendants offered Ms. Kunina room and board at 7 West 82nd Street, in Apt. GF and 3A, to be included as part of her employment compensation.

34.     Defendants, 7 West 82 and Kadoe, at all times relevant, controlled the Buildings Apt. GF and Apt. 3A, New York NY 10024.

35.     Defendants, 7 West 82 and Kadoe, at all times relevant, had keys to the Buildings, Apt. GF and Apt. 3A, New York NY 10024.

36.     Defendants, 7 West 82 and Kadoe, at all times relevant, used the Building's Apt. GF and Apt. 3A, New York NY 10024 for employment purposes.

37.     Defendants, 7 West 82 and Kadoe, at all times relevant, authorized Defendant Kadoch to use 7 West 82nd Street, Apt. 3A, New York NY 10024 for employment purposes.

38.     Defendants, 7 West 82 and Kadoe, at all times relevant, gave Defendant Kadoch keys to 7 West 82nd Street, Apt. 3A, New York NY 10024 for employment purposes.

39.     Defendants, 7 West 82 and Kadoe, at all times relevant, authorized Defendant Kadoch to be an agent of 7 West 82nd Street, Apt. 3A, New York NY 10024 for employment purposes.

40.     As managers, supervisors, and agents of the Building, both Defendants Kadoe and Kodach had keys to the apartment 3A, and accessed the apartment frequently.

41.     During her employment, Ms. Kunina's supervisor knowingly and intentionally took well-planned affirmative steps to place spy cameras in locations where the Plaintiff had a reasonable expectation of privacy, such as in the apartment's bedroom and bathroom.

42.     For example, one of the recordings shows Defendant Kadoch repositioning the cameras in the bedroom and the bathroom.

43.     Defendants used devices that can conceal high-powered video cameras and placed the video cameras in unsuspecting devices in order transmitted a live feed of both visual images and videos wirelessly to separate devices.

44.     Unbeknownst to Ms. Kunina, Defendants covertly video-recorded dozens of videos of the Plaintiff in intimate and private acts.

45.     For example, Defendants' secretly recorded the Ms. Kunina engaged in a sexually explicit act, and the video broke down into mere body parts—in particular, fetishized body parts.

46.     Among the scores of other unlawfully obtained videos, Defendants recorded Ms. Kunina using the bathroom, in her underwear, naked, and in act of showering.

47.     Plaintiff was unaware Defendants were recording her in these various acts, and took measures to secure her privacy by performing these acts behind closed and locked doors.

48.     Plaintiff remained in the apartment until the end of her employment.

49.     Upon discovering the secret recordings, by another employee of 7 West, the New York City Police Department ("NYPD") commenced a criminal investigation and confiscated spy cameras from the interior of bedroom and the bathroom of the employee's apartment 3A. Which included, wireless remote controls, and other electronic equipment related to the illegal videos and images.

50.     Upon discovering clandestine recordings by 7 West's supervisors and managers, of 7 West's employees in the Building, specifically, apartment 3A, the New York City District Attorney's office (NYCDA) brought criminal charges against Kadoch, a 7 West employee.

51.     The NYPD confiscated spy cameras from the interior of the bedroom and the bathroom, wireless remote controls, and other electronic equipment related to the illegal videos and images of 7 West employees while they were on-duty and off-duty in the Building.

52.     On or about October 24, 2014 a New York County grand jury indicted 7 West's employee, Defendant Kadoch on 10 (ten) felony counts relating to these unlawful recordings, and other sexual crimes.

53.     On or about May 28, 2015, a New York County grand jury indicted 7 West's employee, Defendant Kadoch on an additional sixty seven (67) felony counts relating to these unlawful recordings, and other sexual crimes.

### Ms. Kunina, 7 West, and the Kadoes' meet through an au pair agency

54.     At the outset of the events giving rise to this complaint, Plaintiff was residing in Germany.

55.     Cultural Care Au Pair is an international exchange program that matches foreign citizens seeking to work as au pairs with host American families.

56.     Cultural Care Au Pairs program is regulated by the U.S. Department of State which offers the au pairs visas to enter the United States.

57.     Through Cultural Care Au Pair, and 7 West, Ms. Kunina, as an au pair, and the Kadoes, as a host family, were matched together.

### Ms. Kunina's as the Kadoes' au pair.

58.     Ms. Kunina began working as an employee of 7 West, as au pair for the Defendant Kadoe beginning in September 2011.  7 West arranged for her travel to this country and provided an apartment in the Building for the Ms. Kunina to reside in during her employment with 7 West.

59.     In accordance with the au pair program, and duties under her employment with 7 West, Ms. Kunina provided childcare to Kadoe's children.  Her duties included preparing meals for the children, transporting the children to and from school, helping the children with their

homework, and putting the children to bed.  Additionally, Ms. Kunina cleaned and performed household chores in the Buildings ground floor apartment.

60.     Kadoe as a managing member of 7 West provided the Kunina's duties, hours of employment, location, and provided all supplies and materials.

61.     Plaintiff's weekly salary was drawn of an account owned and operated by 7 West. Kadoe, his wife, Renata, or Kadoch signed the checks paid to Kunina.

**The Defendants' reassign Ms. Kunina to clean rental apartments**

62.     In December 2013, 7 West, Kadoch and Kadoe reassigned Kunina to cleaning apartments vacated by the "short-term renters".

63.     In addition to being paid $300 dollars for cleaning services, 7 West continued to provide housing in the Building for Ms. Kunina in the Building for the purposes of taking employee breaks, use of the restroom, to sleep, and shower.

**As And For A First Cause of Action:**
***Against All Defendants***
**SEXUAL HARASSMENT IN VIOLATION OF NYS EXECUTIVE LAW**

64.     Paragraphs 1 to 63 are incorporated as if fully set forth herein.  Plaintiff repeats and realleges the allegations of the complaint as if set forth in full herein.

65.     Ms. Kunina is a female and a member of a class of persons protected by NYS Executive Law §296.

66.     Defendants' conduct of installing surveillance equipment in employee bathroom and bedroom to secretly record Ms. Kunina in the state of undress and other private acts were unwelcomed by the Ms. Kunina.

67.     Ms. Kunina's did not voluntarily expose herself to the Defendants and was

recorded without knowledge of the hidden camera's presence. Ms. Kunina performed these actions behind a closed and locked bathroom door creating and expectation of privacy.

68.     The facts in this case are both objectively and subjectively offensive. The Defendants' covertly video recorded at least 30 videos of the Ms. Kunina during her employment.

69.     The videos included Ms. Kunina using the commode, shower, undressing in the restroom, and engaged in sexual activities for their own personal pleasure.

70.     The Defendants' severe and pervasive conducted created a hostile and abusive work environment that the Plaintiff or any reasonable person would find to be intolerable.

71.     The Defendants purposefully and intentionally installed the surveillance devices in locations they knew would capture the Ms. Kunina naked, washing herself, and engaging in other private acts.

72.     In fact, the recordings show Defendant Kadoch changing the position of the camera to capture explicit images of the Ms. Kunina.

73.     Ms. Kunina alleges that Defendants' secret videotaping of the Plaintiff was sexual harassment under New York State Executive Law Article 15 Human Rights Law § 296(1)(a), which states in part: it shall be an unlawful discriminatory practice by an employer against the Plaintiff, as a protected class member, to sexually harass through the creation of a hostile work environment.

74.     Plaintiff did not voluntarily expose her underwear or naked body to the Defendants. Without her knowledge of the hidden camera's presence, she was rightfully entitled to an expectation of privacy in her underwear or being naked in the bathroom. Plaintiff did not know that videotaping would occur, and it was not reasonable for her to know that such

videos and images would take place behind a close and locked bathroom door.

75.     At all times relevant, the secretive tapings of Plaintiff occurred in the workplace bathrooms, while she showered, and others areas where one expects privacy.

76.     The Plaintiff acted reasonable, and found the Defendant's act of surreptitiously observing her in a private bathroom to be an abusive act.

77.     Defendants had no good faith basis for believing that their practices as alleged above were in compliance with the law.

78.     Defendants' intentional conduct led to a violation of the Plaintiff's rights under the NYS Executive Law Article 15 Human Rights Law.

79.     Defendants' negligent conduct led to a violation of the Plaintiff's rights under the NYS Executive Law Article 15 Human Rights Law.

80.     As a result of the violations by Defendant, which created a hostile work environment, the Plaintiff is entitled to all damages, which include, but not limited to, compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count, and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.


### As And For A Second Cause of Action
#### *Against All Defendants*
### INTENTIONAL INFLCIATION OF EMOTIONAL DISTRESS

81.     Paragraphs 1 to 80 are incorporated as if fully set forth herein.  Plaintiffs repeats and realleges the allegations of the complaint as if set forth in full herein.

82.     Defendants' covert recordings occurred in the interior of the company's

bathroom, which is a place that holds itself out as an offering of a safe environment.  The unauthorized secretive images and recordings captured by Defendants are of a prurient or sexual nature, and are extreme and outrageous.

83.     Moreover, Defendants' conduct itself—surreptitiously video recording Ms. Kunina in a state of undress, in her underwear, or sexual activity—exceeds the bounds of decency in a civilized community.

84.     The touchstone characteristic of this form of severe emotional distress is couched in the premise that the Ms. Kunina was an intentional target, and unaware she was being watched and videotaped in various stages of undress, underwear, or sexual activity.

85.     Defendants' extreme and outrageous conduct caused the Plaintiff severe emotional distress, outrage, psychological injury, and embarrassment.

86.     Regrettably and tragically, Ms. Kunina's sense of privacy and security has been compromised and sacrificed.

87.     Ms. Kunina has become embarrassed, self-conscious, upset and is known to cry on occasions.

88.     Defendants' volitional acts would cause emotional distress to a reasonable person that secretly had her naked body videotaped during the course of her employment.

89.     Clearly, Ms. Kunina suffered emotional harm and mental anguish upon learning of the Defendants' covert recordings, and intentional infringement on her privacy rights

90.     Defendants' intentional extreme and outrageous conduct caused Ms. Kunina severe emotional distress, and the Plaintiff is entitled to all damages, which include, but not limited to compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count,

and award compensatory and punitive damages of $1,000,000.00 along with cost of this action,

attorney's fees and other relief the Court deems proper.

**As And For A Third Cause of Action**
*Against All Defendants*
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

91.     Paragraphs 1 to 90 are incorporated as if fully set forth herein.  Plaintiff repeats

and realleges the allegations of the complaint as if set forth in full herein.

92.     Under common law principles, a plaintiff sets forth a prima facie case of

negligence if he establishes: (1) the existence of a duty owed by the defendant to the plaintiff;

(2) breach of that duty; (3) proximate causation of the plaintiffs' injuries; and (4) damages.

93.     Defendant Kadoe and 7 West's negligent conduct caused Ms. Kunina's

emotional distress, because 7 West's employee installed a secret video camera in workplace

restroom in order to surreptitiously view and record Ms. Kunina while she used restroom,

conduct which was unquestionably negligent.

94.     Under the test for negligence, the Defendants owed a duty to Ms. Kunina not to

subject her to mental anguish by recording her using the bathroom, showing, and engaging in

sexual acts.

95.     Defendants owed a duty of care to the Ms. Kunina of that a reasonable prudent

employer under the same and similar circumstances.

96.     Defendants' breached that duty owed to the Ms. Kunina, when the Defendants

failure to act as a reasonable prudent employer under the same and similar circumstances

because a reasonable employer or supervisor would not secretly install a camera in the interior

of the employer's bathroom and transmit private acts to a separate recording device.

97.     Defendants' acts are the direct cause, since "but for" the Defendants placing a

clandestine video recorder in the bedroom and bathroom, which the Ms. Kunina frequented numerous times a day, the recordings would not have occurred.

98.    Defendants' act is the proximate cause of the Ms. Kunina's emotional distress because the Ms. Kunina was a foreseeable victim, and it was foreseeable that Ms. Kunina would suffer severe emotional distress as an unsuspecting victim being viewed and videotaped over an eighteen-month period.

99.    Ms. Kunina has suffered real damages, and is emotionally distraught and devastated knowing her body was being displayed for the prurient viewing pleasure of Defendants. Ms. Kunina spends sleepless nights over the emotional distress from the Defendants' actions.

100.    Defendants' negligent conduct caused Ms. Kunina severe emotional distress, and the Ms. Kunina is entitled to all damages, which include, but not limited to compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count, and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.

### As And For A Fourth Cause of Action
#### *Against All Defendants*
### INTRUSION INTO SECLUSION

101.    Paragraphs 1 to 100 are incorporated as if fully set forth herein.  Plaintiff repeats and realleges the allegations of the complaint as if set forth in full herein.

102.    Ms. Kunina has a right to be protected from the Defendants' indecent and vulgar intrusion of her right of privacy.

103.    The Defendants gathering of images and videos—in particular, in this case are

not news worthy, and Ms. Kunina is a private individual.

104.    The notion of privacy today applies to Ms. Kunina, and the she had a reasonable expectation and right of privacy while using the employee apartment. She possessed a reasonable expectation of privacy in all areas of the apartment, including the bathroom.

105.    Defendants tacitly, and with a modicum of underhandedness, assembled and concealed cameras in an unassuming hiding place in the interior of the bathroom and bedroom, connected to a wireless remote control, and transmitted undetected videos and images of Ms. Kunina to a separate monitor and computer.

106.    Defendants' hidden cameras infiltrated the Ms. Kunina's zone of physical privacy by obtaining unauthorized access to Ms. Kunina intimate moments.

107.    Ms. Kunina had an objectively reasonable expectation of seclusion or solitude in the Defendants' bathroom and washroom.

108.    Ms. Kunina's claim is couched in the principle that she possessed a reasonable expectation of privacy in the employer's bathroom.  The truly labored efforts of Defendants to get a glimpse of Ms. Kunina's naked body violated her expectation of privacy because placing hidden cameras in the interior of the bathroom, and bedroom is an indecent and vulgar intrusion of the Kunina's privacy.

109.    Defendants' indecent acts were committed without Ms. Kunina's knowledge or volition, and were beyond Ms. Kunina's control.  The Defendants' unauthorized videos and images of Ms. Kunina directly resulted in an intrusion because such videos and images would cause reasonable embarrassment to Ms. Kunina.

110.    Ms. Kunina did not voluntarily expose her body to the Defendants, and she maintained a reasonable and legitimate expectation of privacy in the company's bathroom.  It

was necessary to plant a visual enhancement device in the bathroom where the Defendant would not normally be standing to see the Ms. Kunina naked.  Thus, Ms. Kunina had a reasonable expectation of privacy in the bathroom.

111.    It is clear that Defendants covert and surreptitious video recordings were for the purpose of sexual enjoyment, therefore, highly offensive conduct.

112.    Defendants had no good faith basis for believing that their practices as alleged above were in compliance with the law.

113.    Defendants' conduct violated the Ms. Kunina's right to privacy and seclusion, and Ms. Kunina is entitled to all damages, which include, but not limited to compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count, and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.

### As And For A Fifth Cause of Action
*Against All Defendants*
### PUBLIC DISCLOSURE OF PRIVATE FACTS

114.    Paragraphs 1 to 113 are incorporated as if fully set forth herein.  Plaintiff repeats and realleges the allegations of the complaint as if set forth in full herein.

115.    Ms. Kunina fells helpless since she does not have control over the explicit videos and material.  Defendants have (or may have) distributed the videotapes of her in various stages of undress, underwear, or sexual activity, in public domain, and possibly throughout cyberspace, for public consumption.

116.    Defendants have images and videos of what Ms. Kunina looks like naked, in her underwear, and other states of undress that she would prefer to keep private.

117.    The privacy interest here affects the ability of Ms. Kunina to control the flow and dissemination of her private information about herself to the public.

118.    Ms. Kunina has a cause of action under the common law privacy cause of action known as public disclosure of private facts, because images depicting Ms. Kunina in her underwear, or in a state of undress or sexual activity that were taken in a private bathroom, and fall within the scope of public disclosure of private facts, and the images are non-newsworthy, nor in the public record.

119.    Ms. Kunina's claim against the Defendants for public disclosure of private facts are actionable because the images depicting her in underwear, or in a state of undress or sexual activity that were taken in a private bathroom the highly offensive, and an objectionable reasonable person, and the fact in question is not of legitimate public concern.

120.    Furthermore, the images captured by Defendants of Ms. Kunina are clear and identifiable and that the plaintiff is recognizable from the photographs and videos itself.

121.    The private facts need not be revealed in words to be actionable, but may include something revealed in a photograph, and it is reasonably understood that the recipients of the offending communication know the person and Plaintiff who it relates to.

122.    Ms. Kunina is entitled to prevail on this cause of action because she is identifiable in the communication.

123.    Defendants had no good faith basis for believing that their practices as alleged above were in compliance with the law.

124.    Ms. Kunina's privacy interests were violated and compromised at both the Defendants image gathering, and Defendants image-publishing phases.

125.    Tort law includes a remedy to compensate Ms. Kunina because her

informational privacy right has been violated.

126.    Defendants' wrongful conduct violated the Ms. Kunina's right to privacy, and the Plaintiff is entitled to all damages, which include, but not limited to compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count, and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.

### As And For A Sixth Cause of Action
#### *Against Defendants 7 West and Kadoe*
### NEGLIGENT SUPERVISION AND *RESPONDEAT SUPERIOR*

127.    Paragraphs 1 to 126 are incorporated as if fully set forth herein.  Plaintiff repeats and realleges the allegations of the complaint as if set forth in full herein.

128.    Ms. Kunina is entitled to recover against Defendant 7 West 82 because 7 West 82 is a professional company and the employer of Ms. Kunina.

129.    7 West, Kadoch, and Kadoe are the owners, mangers and supervisors of the Building, 7 West, in which they knowingly permitted or allowed hidden cameras to be installed and maintained in or upon the interior of the bathroom, and bedroom for the sole purpose of surreptitiously recording the images and videos of the Plaintiff.

130.    The Defendants "acts in purchasing and installing illegal surveillance equipment are the acts of the employer," 7 West 82.

131.    Ms. Kunina was a person employed by the 7 West.  7 West failed to adequately supervise Kadoch and Kadoe in such a way that allowed them to surreptitiously record Ms. Kunina.

132.    Furthermore, the employer had reason (or should have had reason) to believe that Kadoch and/or Kadoe were engaging in covert videotaping, and yet, 7 West retained both employees.

**Improper Supervision**

133.    Clearly, the supervisor and employees of 7 West invaded Ms. Kunina's privacy, and the employer breached a duty owed to Ms. Kunina because the employer failed to properly, and carefully supervise Kadoe and Kadoch.

134.    Defendants' wrongful conduct violated the Ms. Kunina's right to privacy, and the Ms. Kunina is entitled to all damages, which include, but not limited to compensatory and punitive damages, attorney fees, and costs.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count, and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.

**As And For A Seventh Cause of Action:**
***Against Defendants 7 West and Kadoe***
**NEGLIGENT ENTRUSTMENT**

135.    Plaintiff repeats, and reiterates and realleges each and every allegation, clam and statement contained in paragraphs 1- 134 of the Complaint herein, with the same force and effect as though fully set forth here.

136.    Defendant 7 West and Kadoe hired Defendant Kadoch, as a manager, supervisor and employee of 7 West.

137.    Defendant 7 West and Kadoe failed to train Kadoch as a manager, supervisor, and employee in charge of other employees.

138.    Defendant 7 West and Kadoe was aware, had knowledge and notice that

Defendant Kadoch was not properly trained, while on the job operating the Building.

139.    Defendant 7 West and Kadoe failed to use reasonable care to prevent harm to Ms. Kunina, and other 7 West employees, by given that Defendant Kadoch a supervisor position and keys to the employee apartment in the Building.

140.    Defendant 7 West and Kadoe had notice and knowledge that Defendant Kadoch was without the proper competence, experience, skill and training as a similar or like supervisor and employee under the circumstances.

141.    Defendant 7 West and Kadoe continued to employ Defendant Kadoch after becoming aware and learning of his improper training and did not take any action to suspend his employment status as an employee of 7 West.

142.    Defendant Kadoch as an employee and agent of 7 West, acted fraudulently, oppressively and with willful, conscious and reckless disregard of Ms. Kunina, and her rights.

143.    As a proximate result of Defendants 7 West and Kadoe's negligence, Ms. Kunina, was permanently and seriously injured.

144.    As a direct and legal result of the negligence, carelessness, recklessness and/or other tortuous conduct of 7 West's employees and supervisors, Ms. Kunina suffered and will continue to suffer extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

145.    Defendants' negligence was a substantial factor in causing Kunina's harm.


### As And For A Eighth Cause of Action:
### *Against Defendants 7 West and Kadoe*
### NEGLIGENT HIRING AND RETENTION


146.    Plaintiff repeats, and reiterates and realleges each and every allegation, clam and

statement contained in paragraphs 1- 145 of the Complaint herein, with the same force and effect as though fully set forth here.

147.    Defendant 7 West and Kadoe are liable for the negligent hiring and retention of an employee and supervisor when the Defendant's knew or should have known of the employee's propensity to commit the acts against Ms. Kunina and other 7 West employees.

148.    Defendant 7 West and Kadoe has/had a duty to investigate a prospective employee when it knows of fact that would lead a reasonable person to investigate that prospective employee.

149.    Defendant 7 West and Kadoe breached its duty owed to Ms. Kunina when 7 West and Kadoe failed to use reasonable care when it hired Defendant, Kadoch.

150.    Defendant 7 West and Kadoe's breach of its duty to properly hire and retain Defendant Kadoch, was both the legal and proximate cause of Ms. Kunina's injuries.

151.    Defendant 7 West and Kadoe continued to employ Kadoch after becoming aware and learning of his improper training and did not take any action.

152.    As a proximate result of Defendants' negligence, Ms. Kunina was permanently and seriously injured when Defendant Kadoch secretly recorder Ms. Kunina's private intimate acts.

153.    As a direct and legal result of the negligence, carelessness, recklessness, and/or other tortuous conduct of Defendants, Ms. Kunina suffered and will continue to suffer extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

154.    Defendants' negligence was a substantial factor in causing Kunina's harm.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on the above Count,

and award compensatory and punitive damages of $1,000,000.00 along with cost of this action, attorney's fees and other relief the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court:

A.  Award Plaintiff compensatory damages as requested in this Complaint and/or as provided by law;

B.  Award Plaintiff punitive damages as requested in this Complaint and/or as proved by law;

C.  Impose a constructive trust in favor of Plaintiff on any assets Defendants may have;

D.  Award Plaintiff statutory attorneys' fees;

E.  Award Plaintiff reasonable attorneys' fees and costs; and

F.  Award Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Respectfully submitted, this 18 day of June, 2015.

JOSEPH MURE, JR., & ASSOCIATES

_____

Joseph Mure, Jr., Esq. (Mure77)
Anthony C. Varbero, Esq. (AV8833)
anthonyvarbero@gmail.com
Attorney for Plaintiff
26 Court Street, Suite 2601
Brooklyn, NY 11242
(718) 852-9100
(718) 797-5554 fax